# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4962-17T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
A.M., SVP-51-00.

_____

Submitted March 28, 2019 – Decided July 8, 2019

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-51-00.

Joseph E. Krakora, Public Defender, attorney for appellant A.M. (Susan Remis Silver, Assistant Deputy Public Defender, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner, A.M., a civilly committed sexually violent predator, appeals from a June 25, 2018 order denying his request for removal from Modified Activities Placement (MAP) status and denial of his motion for a religious

accommodation to the drug testing policy of the Special Treatment Unit (STU) during Ramadan. A.M.'s offending history and civil commitment are not at issue in this appeal, and we have previously affirmed his commitment. In re Commitment of A.S.M., No. A-0624-05 (App. Div. June 9, 2006). In reaching our decision, this court intends no disrespect toward A.M.'s religion and religious practices. We recognize the seriousness of A.M.'s claim that STU's drug testing procedure is a burden on his free exercise of religion, however, we are constrained to reach our decision on jurisdictional grounds.

We discern the following facts from the record. A.M. is an observant Muslim who abstains from eating or drinking from sunrise to sunset during Ramadan. In 2018, Ramadan began in mid-May and ended in mid-June. Prior to Ramadan, A.M. provided urine samples, which were negative for prohibited substances. On May 20, 2018, during the fasting hours of Ramadan, Department of Corrections (DOC) officers requested a urine sample from A.M. A.M. initially protested citing his Ramadan fast, but fearing punishment, A.M. broke his fast and consumed water to provide a urine sample.

Knowing he might have to provide another urine sample but not wanting to break his fast, A.M. urinated in a plastic bottle so a sample would be available if testing was required again. On May 23, 2018, again during the fasting hours

of Ramadan, officers asked A.M. to provide another urine sample. In the view of the DOC officer, A.M. presented his plastic bottle of urine, which the officer confiscated as contraband. The officer told A.M. to provide a urine sample, but A.M. refused due to his Ramadan fast and inability to urinate. A.M. was placed on MAP status for possessing contraband, the bottle of urine, and for refusing to provide a urine sample for testing.

On May 30, 2018, A.M. filed an emergent motion for removal from MAP status. The Honorable Philip M. Freedman, J.S.C. conducted a hearing the following day. During the initial hearing, the judge opined A.M.'s certification, if true, suggests the situation might have been handled improperly, and the judge would need a further hearing to resolve the issue. A.M. never disputed he was in possession of the bottle of urine and A.M.'s counsel conceded the bottle was contraband. However, the judge questioned how A.M.'s possession of the bottle, presumptively to provide a urine sample without breaking his fast, could be considered "contraband in the manner in which that was intended[.]"

On June 4, 2018, A.M. filed a motion for religious accommodation. A.M. requested an order either requiring the State to refrain from demanding a urine sample before sundown during Ramadan or to permit A.M. to wait until after sundown to provide a urine sample during Ramadan. Accordingly, the court

was presented two questions: whether A.M. should be removed from MAP status, and whether he should be granted a religious accommodation. The judge denied relief under both inquiries.

On June 14, 2018, Judge Freedman heard argument on the two motions and denied both in separate orders dated June 25, 2018. A transcript of the hearing was unavailable due to malfunctioning recording equipment, thus, a remand was ordered to reconstruct the record. Judge Freedman provided a written statement of reasons. He denied A.M.'s motion for religious accommodation relying on In re Commitment of K.D., 357 N.J. Super. 94 (App. Div. 2003). There, we held challenges to generally applicable conditions of commitment are not appropriately raised in an individual resident's commitment hearing; rather, they should be raised in a separate action in the Superior Court or the United States District Court for the District of New Jersey. Id. at 99.

In the present case, the judge found defendant's admission he possessed contraband justified MAP placement. Defendant's history of sexual offenses was related to his drug abuse and there was a "clear connection between A.M.'s relapse in the area of substance abuse and his deviant sexual behavior." The judge noted that MAP is not a punishment but modified activities.

A-4962-17T5

The judge determined it was unnecessary to consider A.M.'s placement on MAP status for refusal to give a urine sample on religious grounds, because A.M.'s possession of contraband independently justified MAP placement. The judge stated that if the sole reason for A.M.'s MAP status was his refusal to give a urine sample during Ramadan, he would have held a further hearing on this issue. This appeal followed.

A.M. raises the following arguments on appeal:

POINT I

THE TRIAL COURT ERRED WHEN IT HELD THAT IT LACKED THE JURISDICTION TO DETERMINE WHETHER A.M.'S RIGHT TO PRACTICE HIS RELIGION WAS LAWFULLY RESTRICTED WHEN THE STATE REQUIRED THAT HE PRODUCE A URINE SAMPLE WHILE HE WAS FASTING FOR RAMADAN.

POINT II

A.M. IS ENTITLED TO RECEIVE A RELIGIOUS ACCOMMODATION THAT ALLOWS HIM TO PROVIDE A URINE SAMPLE DURING THE NONFASTING HOURS OF RAMADAN.

POINT III

THE TRIAL COURT FAILED TO PROTECT A.M.'S RIGHT TO PRACTICE HIS RELIGION WHEN IT FAILED TO CONSIDER THAT HIS INABILITY TO PRODUCE A URINE SAMPLE AND HIS URINATION IN A BOTTLE WERE THE DIRECT

RESULT OF THE STATE'S UNLAWFUL REFUSAL
TO ACCOMMODATE HIS RELIGIOUS BELIEFS.

At the outset, we note the highly deferential standard of review. Our "review of a commitment determination is extremely narrow and should be modified only if the record reveals a clear mistake." In re D.C., 146 N.J. 31, 58 (1996). We give the utmost deference to the reviewing judge's determination, as these judges are "specialists" in Sexually Violent Predator Act (SVPA) matters. In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014). The findings of the trial court "should be disturbed only if so clearly mistaken 'that the interests of justice demand intervention[.]'" Id. at 175 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "So long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." Ibid. (quoting Johnson, 42 N.J. at 162).

Under N.J.S.A. 30:4-24.2(a):

> [s]ubject to any other provisions of law and the Constitutions of New Jersey and the United States, no patient shall be deprived of any civil right solely because of receipt of treatment under the provisions of this Title nor shall the treatment modify or vary any legal or civil right of any patient[.]

Under N.J.A.C. 10:36A-2.1(a), "[s]ubject to the [SVPA], and any other provisions of law and the Constitution of New Jersey and the United States, a

6

resident shall not be deprived of a civil right solely by reason of receiving treatment under the provisions of the SVPA."

N.J.A.C. 10:36A-2.3(a)(12), which governs STU residents, specifically guarantees "[t]he right to freedom of religious affiliation and voluntary religious worship; however, reasonable restrictions based upon the safe, secure, orderly operation of the facility may be imposed." Pursuant to that framework, we address A.M.'s arguments.

A.M. argues he is entitled to a religious accommodation allowing him to provide a urine sample during non-fasting hours of Ramadan. In A.M.'s view, the DOC's drug-testing policy places a "substantial burden" on his right to freely exercise his religion. He contends the State cannot justify the restriction on his fasting by showing it is necessary to collect urine samples for orderly operation of the STU in compliance with N.J.A.C. 10:36A-2.3(a)(12). A.M. argues the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1, supports his right to practice his religion and likens his circumstances to Holt v. Hobbs, 574 U.S. __ (2015), which recognized the right of a devout Muslim to grow a beard against prison policy while incarcerated.

In K.D., a confined individual with developmental disabilities argued the sex-offender treatment he received at STU was inadequate in light of his

disability. 357 N.J Super. at 97. K.D. requested "an in-patient locked unit dedicated to the treatment of developmentally disabled sexual offenders[.]" Ibid. "[The court] conclude[d] that a court has the inherent power to examine the conditions of confinement, including treatment, prescribed by the SVPA." Id. at 99.

> We certainly do not suggest that any individual commitment review hearing be converted into a challenge to the sexual offender's treatment program available routinely to the general population of committees under the SVPA . . . . Such a challenge must be brought in a plenary individual or class action in the regular trial courts, state or federal, and not in a particular committee's individual initial or annual review hearing under the SVPA, the purpose of which is to decide if confinement . . . is proper.
>
> [Ibid.]

A.M. argues the trial court misapplied K.D., and the trial court was authorized to address the particular conditions of his confinement at STU because he is not seeking "broad injunctive relief on behalf of all Muslim residents." A.M. acknowledges other similarly situated residents might have the ability to take the same action but argues this does not bar him from raising his own individual rights in a commitment hearing.

K.D. disallowed challenges to the "treatment program available routinely to the general population of committees under the SVPA[.]" Ibid. Here, the

court determined "the issue of religious accommodation for urine drug testing during Ramadan would apply to all Muslim residents." We agree. Numerous other residents of STU are also tested for drugs. The fact that drug testing is a generally-applicable condition of confinement is sufficient to bar A.M. from challenging this at his hearing. While A.M. argues he is only challenging the policy with respect to himself, were he to be granted an exception, the accommodation would extend to all similarly-situated committees. Thus, we discern no abuse of the judge's discretion in declining to address the religious accommodation.

We also reject A.M.'s contention the judge erred when he determined A.M.'s MAP status was proper given the possession of the urine bottle. In M.X.L. v. New Jersey Department of Human Services, we said there was "nothing to preclude an attorney representing [a committee] from addressing a MAP placement that may have occurred between reviews and challenging whether it was appropriate to have placed [the committee] in MAP." 379 N.J. Super. 37, 49 (App. Div. 2005). Further, "MAP placement may be reviewed retrospectively[.]" Ibid. Here, A.M. contends that because the court didn't consider all the circumstances surrounding A.M.'s MAP placement, the court could not determine whether the MAP placement was "appropriate."

"MAP is a component of the clinical treatment program at the STU that focuses on stabilizing disruptive or dangerous behaviors. A primary goal of the STU treatment program is to prepare civilly committed sexual predators to safely return to the community." M.X.L., 379 N.J. Super. at 45. "Removal from MAP status and return of full privileges is warranted when a resident demonstrates the behavioral control skills expected of him. Residents are directed to explore the behavior that resulted in MAP placement in group therapy." Ibid. "MAP is not a punishment to those involuntarily committed, but a necessary part of the entire treatment regimen to rehabilitate those committed to a return to the community." Id. at 48.

Although the judge initially indicated MAP status might not be appropriate if A.M.'s possession of contraband was based on the lack of religious accommodation, the judge found the possession alone justified MAP placement. In his written statement of reasons, the judge stated, "[a]ccepting A.M.'s explanation that the reason he had the bottle of urine was so he could comply with a request for a sample if he was unable to urinate does not change the result." Based on our review of the record, we do not consider the trial court's decision a "clear abuse of discretion." In re Commitment of V.A., 357 N.J. Super. 55, 63 (App. Div. 2003) (quoting In re Commitment of J.P., 339 N.J.

Super. 443, 459 (App. Div. 2001)). Moreover, the record demonstrates the judge did consider the circumstances that led to A.M.'s possession of contraband but found those circumstances inadequate to excuse the contraband possession.

We have carefully reviewed A.M.'s remaining arguments and have determined they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4962-17T5